IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

THOMAS BARRY SISLER, JR. and
KAREN P. SISLER, individually
and as next friend and natural
mother of THOMAS BARRY SISLER, III,
WILLIAM POWDERLY SISLER and
ROBERT GILBERT SISLER, all minors,

    Plaintiffs,

v.                                         Civil Action No. 5:04CV98
                                                                 (STAMP)

FORD MOTOR COMPANY,

    Defendant.

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO STRIKE,
DENYING MOTION TO DISQUALIFY COUNSEL AND
OBJECTION TO APPLICATION FOR ADMISSION PRO HAC VICE,
DENYING MOTION OF BARRY HILL TO WITHDRAW AND
GRANTING ATTORNEYS WATTS AND PINEDO'S
APPLICATION TO APPEAR PRO HAC VICE**

The issue before this Court is whether certain counsel for the plaintiffs improperly failed to disclose the death of plaintiff, Thomas Barry Sisler, Jr. ("Sisler, Jr."), prior to reaching a settlement agreement with the defendant, and whether the defendant is entitled to certain relief for plaintiffs' counsel's failure. After considering initial briefs on the issue, conducting a motions hearing and considering briefs entered after the hearing, this Court finds that defendant's motion to disqualify counsel should be denied, but that certain counsel should be censured.

## I. Procedural History

On August 6, 2004, this action was filed in the Circuit Court of Marshall County, West Virginia, by plaintiffs, Thomas Barry Sisler, Jr. and Karen P. Sisler, individually and as next friend and natural mother of Thomas Barry Sisler, III, William Powderly Sisler and Robert Gilbert Sisler, all minors. On September 9, 2004, the defendant, Ford Motor Company ("Ford"), removed the action to this Court. On March 14, 2005, plaintiff Karen Sisler filed a motion to appoint a guardian ad litem for the minor plaintiffs, indicating that parties had reached a tentative settlement resolving the issues in this case. Accordingly, this Court entered an order scheduling an infant settlement hearing for April 12, 2005.

On April 4, 2005, plaintiff Karen Sisler filed a motion to substitute for Thomas Barry Sisler, Jr., who had died on October 24, 2004, over five months earlier. On April 11, 2005, Ford filed a motion to continue the infant settlement hearing, contending that the plaintiffs had mislead Ford in settlement negotiations by not disclosing the death of Thomas Sisler, Jr. prior to the settlement initially agreed upon by Ford. Plaintiffs' local counsel, Barry M. Hill ("Hill"), filed a response indicating that the infant settlement hearing was likely impractical in light of Ford's motion. On April 11, 2005, this Court vacated the infant settlement hearing.

On May 6, 2005, Ford filed a motion to disqualify Mikal C. Watts ("Watts"), T. Christopher Pinedo ("Pinedo") and the Watts Law Firm, L.L.P. ("Watts Law Firm"). On May 17, 2005, Hill, local counsel for the plaintiff, filed a motion for leave to withdraw. Counsel for the plaintiffs filed a response in opposition to Ford's motion to disqualify, and Ford filed a response with reservations to Hill's motion to withdraw. On June 15, 2005, some nine months after this action was removed to this Court, plaintiffs' counsel, Watts and Pinedo, filed an application for admission pro hac vice. Ford filed an objection to this application, and the parties filed a joint motion to vacate the scheduling order that had been reinstated following the implosion of the tentative settlement.

On July 12, 2005, this Court entered an order directing the parties to appear for a motions hearing (the "motions hearing") on Hill's motion to withdraw, Ford's motion to disqualify, and Watts' and Pinedo's application for admission pro hac vice. Following oral argument, this Court directed the parties to file any briefs in support of their position by the close of business on Monday, July 18, 2005. On July 18, 2005, Ford filed a reply in support of its motion to disqualify. On July 19, 2005, the plaintiffs filed a response in opposition to the motion to disqualify. On July 20, 2005, Ford filed a motion to strike the plaintiffs' response in opposition to the motion to disqualify as untimely pursuant to this

Court's briefing schedule given from the bench.[1]  No response has been filed to Ford's motion to strike but this Court nevertheless considered the plaintiffs' response.

## II. Facts

This case arises out of an automobile accident that occurred on or about August 7, 2003 when Thomas Sisler, Jr. was involved in a rollover accident while he was driving a 1997 Ford Explorer. Thomas Sisler, Jr. survived the accident, but sustained injuries that rendered him a quadriplegic.  The plaintiffs' complaint alleges, in part, that Thomas Sisler, Jr. would "continue to incur medical and life care expenses for the rest of his life." (Compl. ¶ 29.)

On October 24, 2004, plaintiff, Thomas Barry Sisler, Jr., died.[2] (Mot. Disqualify Hr'g Tr. 8., July 12, 2005.)  At that time, counsel for the plaintiffs failed to file a suggestion of death or motion for substitution pursuant to Federal Rule of Civil Procedure 25.[3]  Instead, initial disclosures were submitted to

---

[1] This Court directed the parties to file additional responses to defendant's motion to disqualify on or before July 18, 2005.

[2] Ford contends that, according to the coroner's report on Thomas Sisler, Jr., the plaintiff died of causes unrelated to the accident at issue.  Id. at 8.  However, Mr. Watts, plaintiffs' attorney, stated at the hearing that he did not accept as a fact the representations that Thomas Sisler, Jr.'s death was unrelated to the accident at issue.

[3] As stated above, plaintiffs did not file a motion for substitution until April 4, 2005.  A suggestion of death was never submitted.

4

opposing counsel on November 12, 2004, and identified eleven medical treatment providers who were disclosed as having discoverable information pertaining to Thomas Sisler, Jr.'s "prognosis." (Def.'s Mot. Disqualify, Ex. A.) Attorney Gregory Gowan of the Watts Law Firm stated that he signed the disclosures made in this action, but did not learn of Thomas Sisler, Jr.'s death until January or February 2005.

Attorney Pinedo, whose job it was at the Watts Law Firm to prepare the initial disclosures, testified at the motions hearing that he could not remember exactly when he learned of Thomas Sisler, Jr.'s death, but that he believed it to be in November 2004. (Mot. Disqualify Hr'g Tr. 32-33.)[4] Attorney Hill stated at the motions hearing that he learned of Thomas Sisler, Jr.'s death from Pinedo at some time in November 2004. Id. at 21. Attorney Pinedo agreed that he had an affirmative duty to supplement his initial disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure, but indicated that he did not remember taking "any affirmative action on the case in November." Id. at 34.[5]

---

[4] Attorney Pinedo indicated that he could not give this Court a more specific date as to when he first learned of Sisler, Jr.'s death.

[5] It should be noted that, in the plaintiffs' response to Ford's motion to disqualify, plaintiffs' counsel indicated that the need to file a motion to substitute or supplement disclosures had become moot once the plaintiffs reached a settlement with Ford. Appropriately, Attorney Pinedo rejected this argument in his testimony at the hearing by admitting that the plaintiffs had an affirmative duty to supplement. Similarly, Attorney Watts agreed

5

Attorney Watts stated that he first learned of Thomas Sisler, Jr.'s death on or about November 17 or November 18, 2004. Id. at 50. Watts stated that settlement negotiations concerning this action began around December 20, 2004. Id. at 53. Watts stated that he did not inform Ford of Thomas Sisler, Jr.'s death, but that he believed that Ford was aware of the death based on the amount of Ford's settlement offer. Id. at 56-57.[6] Nevertheless, the attorneys for the plaintiffs failed to file a motion to substitute until April 4, 2005, at least five months after Attorneys Watts and Pinedo learned of Thomas Sisler, Jr.'s death. Importantly, the parties reached an initial settlement agreement on December 22, 2004, in the amount of $1,250,000.00, several months before Thomas Sisler, Jr.'s death was disclosed to Ford.

## III. Applicable Law

Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, the parties in a civil action have a duty to supplement their initial disclosures "if the party learns that in some

---

at the hearing that his firm had an affirmative duty to disclose Thomas Sisler, Jr.'s death.

[6] Kevin Kimball, corporate counsel for Ford, disputes this fact, and stated that the low settlement amount should have been an indication to Watts that Ford was unaware of Sisler, Jr.'s death. It should also be noted that the referring lawyer in this case, William Powderly, practiced personal injury law and was plaintiff Karen Sisler's father-in-law. Although he is not an attorney of record in this case, he would certainly have learned of Thomas Sisler, Jr.'s death promptly, and been aware of the importance of passing such information along to the Watts Law Firm.

6

material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

In West Virginia, Rule 3.4 of the West Virginia Code of Professional Responsibility articulates the duty of candor and good faith in disclosing material facts to opposing counsel. Similarly, Rule 3.3 provides that a lawyer must disclose material facts to a tribunal.

The Fourth Circuit maintains that an attorney has a general duty of candor and good faith: "The system can provide no harbor for clever devices to divert the search, mislead opposing counsel or the court, or cover up that which is necessary for justice in the end." United States v. Shaffer Equip. Co., 11 F.3d 450, 457-58 (4th Cir. 1993). Where an attorney breaches his duty of candor and acts in bad faith contrary to the requirements of local rules of professional responsibility, a district court has the inherent power to impose sanctions. Id. at 458 (citing Chambers v. NASCO, Inc., 501 U.S. 32 (1991)(holding that court has "inherent power to impose sanctions for . . . bad faith conduct")).

However, the Fourth Circuit has also found that "because [a court's] inherent power [to sanction] is not regulated by Congress or the people and is particularly subject to abuse, it must be exercised with the greatest restraint and caution, and then only to

the extent necessary." Shaffer at 462. The Fourth Circuit reviews a district court's imposition of sanctions by distinguishing between sanctions for civil and criminal contempt. Buffington v. Baltimore County, Md., 913 F.2d 113 (4th Cir. 1990), held that "when the nature of the relief and the purpose for which the contempt sanction is imposed is remedial and intended to coerce the contemnor into compliance with court orders or to compensate the complainant for loss sustained, the contempt is civil; if, on the other hand, the relief seeks to vindicate the authority of the court by punishing the contemnor and deterring future litigants' misconduct, the contempt is criminal." Id. at 133. Punitive sanctions require the protections of a criminal proceeding. Id. at 133. Civil contempt is found by "clear and convincing evidence." Cromer at 821 (citing Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000)).

Ultimately, as the Supreme Court has stated, the "critical features" for determining whether a sanction is lawful in a particular case, are the "substance of the proceeding and the character of the relief that the proceeding will afford." Hicks v. Feiock, 485 U.S. 624, 632 (1988).

## IV. Discussion

The defendant argues that the failure of the plaintiffs to disclose the death of Sisler, Jr. should result in disqualification of the Watts Law Firm, plaintiffs' national counsel. The defendant

8

contends that such omission was the result of intentional misrepresentation, but that even if the misrepresentation was unintentional, plaintiffs failed in their duty to promptly inform this Court and the opposing party of material information. Further, the defendant argues that the Watts Law Firm should be sanctioned for failing to apply for admission pro hac vice before engaging in the practice of law in West Virginia.

Counsel for the plaintiffs argues that the Watts Law Firm did not misrepresent to the defendant the death of Thomas Sisler, Jr. Instead, members of the Watts Law Firm maintain that they were under the impression, based in part on the amount offered in settlement negotiations, that Ford already knew of Sisler, Jr.'s death. Counsel for the plaintiffs argue that they did not have an opportunity to supplement their November 12, 2004 initial disclosures because the case settled so quickly.[7]

In Virzi v. Grand Trunk Warehouse, 571 F. Supp. 507 (E.D. Mich. 1983), the plaintiff failed to inform the court and opposing counsel of the death of his client prior to settlement. The court set aside the settlement between the parties, finding that the plaintiff's attorney was required to disclose the death of his client to the court pursuant to Rule 25 of the Federal Rules of

---

[7] As stated above, the parties reached a final settlement agreement on December 22, 2004.

Civil Procedure.[8] The court also found that disclosure to opposing counsel was required: "Although each lawyer has a duty to contend, with zeal, for the rights of his client, he also owes an affirmative duty of candor and frankness to the Court and to opposing counsel when such a major event as the death of the plaintiff has taken place." Id. at 512.

In Ausherman v. Bank of America Corp., 212 F. Supp. 2d 435 (D. Md. 2002), the attorney for the plaintiff failed to disclose the factual basis for his claim. The court found the defendant had made credible allegations of serious ethical misconduct. However, the court referred the matter to the court's disciplinary committee pursuant to its local rules, maintaining that such a procedure would be fairer to the parties, the attorneys, and the preservation of the integrity of "our adversary system of dispute resolution." Id. at 444. In addition, the court imposed on plaintiff's counsel costs and reasonable attorneys' fees relating to the defendant's effort to learn the factual basis for the plaintiff's cause of action.

In the instant action, this Court finds that the plaintiffs' counsel did, in fact, misrepresent to the defendant the claims of Thomas Sisler, Jr. Moreover, this Court finds by a preponderance

---

[8] Rule 25 states that: "If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties." Accordingly, Rule 25 requires a motion for substitution to be filed.

10

of evidence that the plaintiffs' counsel's conduct was extremely negligent so as to constitute bad faith and to warrant censure by this Court. See Kotsilieris v. Chalmers, 966 F.2d 1181, 1185 (7th Cir. 1992) (extremely negligent behavior, like reckless and indifferent conduct, constitutes bad faith).

For example, although plaintiffs' counsel has been vague about when members of the Watts Law Firm actually learned of Thomas Sisler, Jr.'s death, both attorneys Watts and Pinedo concede that they learned of the death at least five months prior to disclosing the information to opposing counsel. Initially, plaintiffs' counsel first argued that Ford "must have known" of Thomas Sisler, Jr.'s death in light of settlement discussions. However, at the hearing, plaintiffs' counsel understandably retreated from this position, indicating that they simply believed Ford knew and recognizing that they had a duty to be sure that Ford knew.

Also revealing is the fact that plaintiffs' counsel submitted initial disclosures that misleadingly referenced Thomas Sisler, Jr.'s medical "prognosis" even though he was dead at the time. Specifically, the plaintiffs indicated that "all medical providers are expected to testify fully as to history, examination, treatment, prognosis and causation as related to Plaintiff's injuries that form the basis for this lawsuit." (Defs.' Mot. Disqualify, Ex. A.) Needless to say, a deceased person has no medical prognosis. Plaintiffs' counsel then negotiated a

settlement for <u>all</u> plaintiffs in the action, including the deceased Thomas Sisler, Jr., and no supplemental disclosure was ever filed.

## V. Conclusion

For the reasons stated above, this Court censures Attorney Mikal C. Watts and Attorney T. Christopher Pinedo for failing in their duty of candor and good faith by failing to properly disclose Thomas Sisler, Jr.'s death to the defendant, Ford Motor Company.[9] However, because this Court finds that the conduct of Attorney Watts and Attorney Pinedo was grossly negligent, but not willful, under a clear and convincing standard, this Court DENIES the defendant's motion to disqualify and DENIES the defendant's objection to the application for admission pro hac vice of Watts and Pinedo. Accordingly, this Court DENIES local counsel Hill's motion to withdraw as moot since the Watts Law Firm will continue to represent the plaintiffs as national counsel, and GRANTS Watts and Pinedo's application for admission pro hac vice.[10] Finally, the defendant's motion to strike plaintiffs' response to the motion to disqualify is DENIED.

---

[9] Under the circumstances, this Court sees no reason to censure the entire Watts Law Firm, which would necessarily include attorneys in no way involved in this incident. Further, this Court believes that Attorney Gowan's role was, on balance, minor, and does not warrant censure.

[10] By granting that motion, this Court does not mean to minimize or trivialize the importance of the <u>pro hac vice</u> local rules and the need for promptly following the application of those rules.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED: October 27, 2005

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE